**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **FELICIA SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO. 08-0383-CG-B** |
| | ) | |
| **DISPOSALL, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

On July 2, 2008, Felicia Smith brought a lawsuit against DisposAll, Inc. ("DisposAll") claiming that after she was hired by the defendant, she was subjected to sexual harassment by her supervisor during the course of her employment and that after she complained about the unlawful harassment, the defendant retaliated against her by terminating her employment. (Docs. 1 & 6). This matter is now before the court on DisposAll's motion for summary judgment (Doc. 53), the plaintiff's response (Doc. 60), and DisposAll's reply. (Doc. 63). For the reasons stated below, DisposAll's motion for summary judgment is due to be GRANTED.

## FACTS

In September 2005, the plaintiff submitted an application for employment with DisposAll. The application lists the company's name as "DisposAll" at the top of the first page and at various times throughout the document. In the application, the plaintiff initialed a statement that provided the she "acknowledge[d] and agree[d] that if at any time [she is] subjected to any type of discrimination or harassment, [she] will contact [her] supervisor or DisposAll's Executive Director to obtain assistance in the resolution of such matters." (Doc. 53-2, pp. 45-47).

On October 3, 2005, the plaintiff signed an agreement confirming her employment "with DisposAll, Inc., and its affiliated Companies..."  The agreement contains the same logo and company name as the application for employment.  (Doc. 23-11, p. 1).  Also in October 2005, the plaintiff signed a document which states that she read and understood all the company's rules and regulations.  (Doc. 53-2, Smith Dep., p. 53).  The first page of this document contains the same logo and name as the application for employment and the agreement.  (Id., p. 48).  The rules and regulations include a section on "Sexual Harassment" which states that if an employee is subject to harassment by another employee or supervisor, the employee "should immediately report" the harassment to a "Supervisor or the General Manager" and that the employee will not be "retaliated against for either filing a complaint or participating in an investigation of harassment."[1]  (Id., p. 52).

The plaintiff worked for DisposAll from approximately September 26, 2005, until she was discharged on or about February 7, 2006.  (Doc. 6, ¶¶ 10-11).  As an office assistant, her duties included answering the telephone, greeting visitors, and helping collect past due accounts owed to DisposAll.  (Doc. 53-2, Smith Dep., p. 3-6).  During her initial interview, the plaintiff testified that Charlotte Bradley and Mark Calabrese ("Mark") told her "that the company was started out of I think it's Alamonte Springs, Florida, and that I would be doing work for several of the branches" and that "[w]hen I do the collection, it would be for several of the branches

---

[1] The plaintiff also submitted to this court a check list of required forms needed for new employees.  This list contains the same logo and name as the application for employment and the agreement.  The list provides that "[t]his form is to be delivered to the Payroll Administrator along with all the appropriate documents..."  (Doc. 23-8).  The plaintiff provided a different checklist that provides that all new hire forms were to be sent to "the Payroll Department in Alamonte Springs, Florida for processing."  (Doc. 23-12).

under that corporate – under that umbrella." (Id., p. 4-5).

At the time she was hired, Mark was the supervisor of the Mobile DisposAll facility.

(Id., pp. 12-13).  While employed at DisposAll's Mobile facility, the plaintiff asserts that Mark

sexually harassed her by (1) brushing up against her breasts, "lean[ing]" all over her, and

sometimes placing his arm on her breasts[2]  (Id., pp. 18-20, 23-24, 35-38);  (2) "frequently"

stating he could use her breasts as pillows and that her breasts were "huge" (Id., pp. 14, 21);  (3)

stating while she was bent over that he liked her "butt" and would look good behind it  (Id., pp.

14, 16, 25);  (4) taking a sausage from a holiday gift basket and holding it against his groin area

and stating he could be her sugar daddy  (Id., p. 15); (5) calling her at home and other times

asking her to come to his hotel room  (Id., pp. 15, 28-30); (6) telling her that she would "fit in"

with the waitresses at Hooters  (Id., pp. 14, 22); and (7) asking him to help put his clothes on

(Id., p. 17).  At one point in her deposition, the plaintiff testified that she did not feel physically

threatened by Mark (Id., p. 26), but later testified that she did feel like Mark would physically

threaten her or harm her because "I started to feel like he was kind of like a loose cannon..." (Id.,

p. 28).  Furthermore, she admitted that Mark never promised work-related benefits if she gave

into any of his advances. (Id., pp. 27 & 29).

At the time she was hired, the plaintiff admitted she was aware that DisposAll maintained

a policy prohibiting sexual harassment and unwanted touching and that she could make any

complaints of sexual harassment to Eugene Calabrese ("Eugene"), who was DisposAll's

president and the brother of Mark.  (Id., pp. 10, 31-33).  The plaintiff did not contact Eugene

---

[2] The plaintiff could not testify as to the specific number of times these incidents
occurred but did state that it was "too many to count" and that sometimes it would happen more
than once in a day. (Doc. 53-2, p. 191-193).

directly or the human resources department in Florida concerning Mark's conduct because "I felt nothing would happen being that was his brother" and because the human resources department "was all his family..." (Id., pp. 32 & 34).  The plaintiff did ask Mark to stop the harassing conduct but the alleged harassment continued.  (Id., pp. 20 & 23).

On January 10, 2006, the plaintiff's attorney sent a letter to Eugene which provided that he represented the plaintiff, that she has been sexually harassed by Mark, that she "has found no policy or procedure manual or other internal mechanism to her to address these problems", and that the plaintiff would "file an EEOC charge of discrimination on her behalf on January 17, 2006."  (Doc. 53-2, p. 54).  On January 19, 2006, Greg Gerjel, the general counsel for DisposAll, met with the plaintiff in connection with the allegations of sexual harassment.  Mr. Gerjel sent a correspondence to the plaintiff's attorney stating the following:

> Following my meeting with Ms. Smith, I advised her that she was a welcomed part of DisposAll's workforce and her report would in no way affect employment status.  At the same time, I made it clear to Ms. Smith that she would be expected to adhere to DisposAll's employee rules and regulations and continue to perform her job in a professional manner.  I felt this reminder was necessary due to report that Ms. Smith had recently moved her work station into a private office and was spending a great deal of time behind closed doors on her cell phone.  Despite assurances from Ms. Smith that she would comply, it appears a situation has arisen wherein Ms. Smith has chosen to resign her employment rather than adhere to DisposAll's policy.

(Id., p. 40).

The plaintiff admits that Mr. Gerjel told her that her report would in no way affect her employment status but denies that Mr. Gerjel informed her of any of the other allegations in the correspondence.  (Id., p. 41-42).  The plaintiff asserts that Mr. Gerjel told her that "he would investigate" and that "the situation would be handled".  (Id., p. 42).  After that meeting, the plaintiff admits that she suffered no more sexual harassment.  (Id., pp. 42-43).

4

As part of his investigation, Mr. Gerjel took sworn statements of three employees. (Docs. 23-2, 23-3 & 23-4).  In these sworn statements, Mr. Gerjel identified himself as general counsel for "DisposAll" and stated that he was going from "office to office" to talk about the harassment policy and also to discuss the plaintiff's complaint. (Doc. 23-3, p. 3).  Mr. Gerjel also stated that he is "proud... working for DisposAll" and that he gets "to go to all the different offices..." (Doc. 23-4, p. 8).  Mr. Gerjel maintains that an employee "can go to a manager or you can go to the corporate office and let them know..." of any complaints about harassment. (Id., p. 11; see also, Doc. 23-2, p. 11).

After the plaintiff made her complaint, Reese Stewart, an employee of Refuse Management, Inc.[3] ("Refuse") who initially helped oversee DisposAll operations in Gautier, Mississippi, replaced Mark as general manager of the DisposAll Mobile facility. (Id., p. 43; Doc. 53-3, Stewart Aff., ¶¶ 2, 5 & 9).  Prior to becoming general manager, he "had heard Ms. Smith was a good employee, however, shortly after my arrival it immediately became apparent that this was not the case."  (Doc. 53-3, Stewart Aff., ¶ 11).  Mr. Stewart testified that while he was acting general manager, (1) the plaintiff "was rude, argumentative, and frequently intentionally failed to perform her job duties" (Id., ¶ 12); (2) the plaintiff "seemingly took advantage of every opportunity to aggravate me, Eugene Calabrese, and corporate visitors who called or visited the facility" (Id., ¶ 13); (3) he "received numerous complaints from potential and existing customers about Ms. Smith's attitude and work" (Id., ¶ 14); and (4) despite her important role as "the first person new and existing customers would speak with when they contacted or visited the

---

[3] Refuse "provides consulting, personnel and legal assistance to companies." "Companies with the DisposAll name frequently used Refuse on a fee for service basis for consulting, personnel and legal assistance." (Doc. 53-3, Stewart Aff., ¶¶ 3 & 4).

company", the plaintiff "consistently displayed poor phone and work habits and was frequently verbally counseled about her attitude" (Id., ¶¶ 15-16). For example, Mr. Stewart testified that "Ms. Smith moved, on her own accord, all her personal and business items from the front desk to a side office, despite the fact she was the office receptionist and responsible for greeting visitors as they came to the facility, and would frequently close the door, turn the lights off, light candles, and play soft music during her work time." (Id., ¶ 17). After informing the plaintiff that she needed to move back to the front desk several times (Id., ¶¶ 18-20), Mr. Stewart testified that the plaintiff's "poor behavior continued" and that "the situation came to a head on February 7, 2006." (Id., ¶ 21).

On February 7, 2006, Mr. Stewart testified that he "warned Ms. Smith on three different occasions she was answering the phone inappropriately" and that in his "verbal warnings", he "informed Ms. Smith that she had, right in front of her posted on the monitor of all desks, a printout with the proper protocol for answering phone calls and she must follow it, that she must answer the phone in a courteous and friendly manner, and that I would not warn her about this anymore." (Id., ¶¶ 22 & 24). Mr. Stewart observed that "Ms. Smith continued to answer the phone in a rude manner and refused to perform her job duties" thus he asked "her to leave." (Id., ¶ 25). Mr. Stewart testified that the plaintiff "did not inquire as to whether she was fired, suspended or just asked to leave the property" and that the plaintiff "left and did not return, effectively ending her employment at DisposAll of Mobile." (Id., ¶ 26). Mr. Stewart maintains that he "did not communicate with anyone at DisposAll, Inc. prior to telling her to leave", that "[n]o one at DisposAll, Inc. had anything to do with Ms. Smith's termination", and that he "a Refuse Management employee, told Ms. Smith to leave the facility but she ended her

employment by not returning and not inquiring about her rights and future with the company."
(Id., ¶¶ 28-30).  In regards to the events of February 7, 2006, the plaintiff testified that she was
"on the phone with Susan" when she got fired, that she remembered Mr. Stewart "coming in and
he looked at my desk and he saw the messages at my desk, and he asked me why hadn't I done
anything with the messages yet."  She asserts that "before I could even respond or anything, he
said, are you drawing a line in the sand with me".  She responded "what do you mean", to which
he said "you're out of here. Pack your stuff and leave."  (Doc. 53-2, Smith Dep., p. 44).

At some point thereafter, the plaintiff filed a timely sworn charge of discrimination with
the United States Equal Employment Opportunity Commission ("EEOC") (Charge No. 420-
2006-01016), a charge which was investigated by the EEOC.  On April 1, 2006, Mr. Gerjel sent
to the EEOC "DisposAll, Inc., of Mobile's Reply" of the plaintiff's charge.  In that reply, Mr.
Gerjel stated that the plaintiff "was hired as an office assistant... in DisposAll's Mobile, Alabama
facility."  Mr. Gerjel, in part, argued that (1) the plaintiff was "provided with a copy of
DisposAll's 'Employee Rules and Regulations'" which advised her of the company's harassment
policy and procedure; (2) "DisposAll was not made aware of any instances or complaints of
harassment involving" the plaintiff until it received the letter from her attorney, and the plaintiff
failed "to report any problem to her Regional Manager, Reese Stewart, who was a frequent
visitor to the Theodore location"; (3) that upon receiving the complaint "DisposAll immediately
set out to investigate the merits of the matter" by sending "[p]ersonnel.. from Refuse
Management's... office to interview Ms. Smith and her co-workers at the Theodore, Alabama
location"; and (4) upon concluding the investigation and relocating the "subject manager" "out
of State", "Ms. Smith made no further complaints of harassment or employer retaliation prior to

her voluntary termination."  (Doc. 23-5, pp. 2-3).  On August 27, 2007, the EEOC issued a

determination which provided that "the evidence obtained during the investigation establishes

reasonable cause to believe a violation of [Title VII of the Civil Rights Act of 1964, as amended,

42 U.S.C. 2000e, et. seq. ("Title VII")] has occurred, with respect to [the plaintiff's]

termination" but that the "evidence was insufficient to establish that actionable sexual

harassment occurred."  (Doc. 23-1, p. 1).  On April 2, 2008, the EEOC issued a notice for the

plaintiff's right to sue for violations of Title VII.

On July 7, 2009, the plaintiff filed a lawsuit in this court against "DiposAll, Inc.[] an

Florida Corporation doing business in the State of Alabama." (Doc. 6, p. 3).  Eugene, however,

testified that there are actually three separate companies at issue in this case: (1) DisposAll, Inc.

of Mobile ("DisposAll-Mobile") which was duly organized on January 7, 2002, and validly

existed until its dissolution on May 6, 2008.  Disposall-Mobile was owned by Eugene who also

served as its president, and its business was residential and commercial garbage collection

services in and around Mobile, Alabama.  (Doc. 53-1, Eugene Aff., ¶¶ 6 & 8); (2) DisposAll,

Inc. of Florida ("DisposAll-Florida") which is a duly organized and validly existing Florida

corporation with its principal place of business in Alamonte Springs, Florida.  DisposAll,

Florida, was incorporated in Florida in January 2003.  This company is also owned by Eugene

who also served as its president, and its business was residential and commercial garbage and

waste disposal, recycling and construction debris in and around central Florida (Id., ¶¶ 6 & 7);

and (3) Refuse Management which is a duly organized and validly existing Florida corporation

that was formed in 1989, and all of its stock is owned by Eugene.  This company provides

consulting, personnel, payroll, billing and legal assistance for a fee to companies that include

DisposAll-Mobile and DisposAll-Florida, as well as other companies in which Eugene has no

ownership interest.  (Id., ¶¶ 3-6).  Eugene explained the interaction between these three

companies in his affidavit:

> 9. DisposAll-Mobile and DisposAll-Florida operated in separate states with separate workforces.  Each was separately and independently responsible for day to day operations and business decisions, with advice from Refuse Management... for a fee.  Each company is subject to the ultimate authority of it[s] owner.  Each company was responsible for dealing with its existing customers and finding new customers.  Each company bought its own advertising.  Each company bought or leased its own equipment.  Each rented or leased its own business premises.  Each paid its own taxes.  Each had its own Federal Tax Identification Number.  Each maintained its own bank account.

> 10.  Refuse Management drafts personnel forms, policies and procedures for each of the companies it serves, including DisposAll-Mobile and DisposAll-Florida.  These forms and policies are generically labeled "DisposAll" or "DisposAll, Inc."  DisposAll-Mobile and DisposAll-Florida have both adopted policies written by Refuse Management, Inc., including a hiring/termination procedure, employee evaluation procedure, and discrimination/harassment procedures.  Those policies are administered locally, by each separate company's employees with assistance from Refuse Management if requested by local management.  Refuse Management began drafting these policies before either DisposAll, Inc. or DisposAll-Mobile existed.  DisposAll, Inc. did not prepare any documents, policies and procedures, applications or any other documents for DisposAll-Mobile.  Refuse Management prepared all of these documents for the individual DisposAll companies.

> (Id., ¶ 9-10).

Eugene testified that "[c]onsistent with its routine practice, Refuse Management performed the

initial hire and orientation paperwork, including reference checks, related to plaintiff Felicia

Smith..."  (Id., ¶ 11).  Attached to Eugene's declaration was an Alabama Department of

Industrial Relations New Hire Report, which was filed with the State of Alabama and states that

the plaintiff's employer is Disposall Inc. of Mobile.  (Id., p. 5; ¶ 11).  Eugene testified that

"[n]either Refuse Management nor DisposAll-Flroida made the decision to hire Felicia Smith"

and that "[t]he hiring decision was made by management of DisposAll-Mobile." (Id., ¶ 11). Furthermore, Eugene testified that "[n]o employees of DisposAll-Florida were involved in Felicia Smith's... termination, or the investigation of the alleged sexual harassment." (Id., ¶ 14).

## LEGAL ANALYSIS

### I. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).   "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'"  Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249).   "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument of

the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor.  Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir.1999).   "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment."  Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir.1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment."  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).   "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."   Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted).  "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole."  Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal

quotation and citation omitted).

## II. Title VII

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Title VII's prohibition against discrimination based on sex encompasses sexual harassment.  See e.g., Mendoza v. Borden, Inc., 195 F.3d 1238, 1244 (11th Cir. 1999)(en banc); Walker v. NationsBank of Fla., N.A., 53 F.3d 1548, 1555 (11th Cir. 1995).  Generally, sexual harassment comes in two forms: harassment that results in a tangible employment action and harassment from a hostile work environment.  Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 508 (11th Cir. 2000).

### A. Harassment that results in a tangible employment action

In her amended complaint, the plaintiff maintains that she was "terminated in retaliation for [her] complaints of sexual harassment." (Doc. 6, p. 4).  Title VII prohibits an employer from retaliating against an employee "because [s]he has opposed any practice made an unlawful employment practice... or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.  42 U.S.C. § 2000e-3(a).  "A prima facie case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action."  Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008)(quoting Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001).  Like a discrimination

claim, "if the appellees articulate legitimate reasons for their actions, [the plaintiff] must then 'show that the employer's proffered reasons for taking the adverse action were actually a pretext for prohibited retaliatory conduct.'" McCann v. Tillman, 526 F.3d 1370, 1375 (11th Cir. 2008)(citation omitted).  "In order to do so," the plaintiff "must demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reasons for its action that a reasonable factfinder could find them unworthy of credence." Id. (citation omitted).

        The defendant has provided legitimate reasons why the plaintiff's employment was terminated.  Mr. Stewart, an employee of Refuse and the acting general manager at the time the plaintiff's employment was terminated, testified that upon observing the plaintiff answering the phones inappropriately and warning her accordingly, he eventually asked her to leave the office, and without asking whether she were to return to work at a later time, the plaintiff never came back to the office, an event which effectively terminated her employment.  (See Doc. 53-3, Stewart Aff., ¶¶ 23-30).  In her response, the plaintiff did not point to any weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in DiposAll's proffered reasons for the termination of the plaintiff's employment.  (See Doc. 60).  The only other evidence as to the plaintiff's termination is the plaintiff's testimony that she was "on the phone with Susan" when she got fired, that she remembered Mr. Stewart "coming in and he looked at my desk and he saw the messages at my desk, and he asked me why hadn't I done anything with the messages yet." She asserts that "before I could even respond or anything, he said, are you drawing a line in the sand with me" and that she "didn't know what that meant."  She responded "what do you mean", to which he said "you're out of here. Pack your stuff and leave."  (Doc. 53-2, Smith

Dep., p. 44).  Viewing all the evidence in a light most favorable to the plaintiff, the court finds that plaintiff has not met her burden of showing that a reasonable jury could conclude that DisposAll's proffered reasons for the plaintiff's termination were a pretext for prohibited retaliatory conduct.  Thus, summary judgment as to the plaintiff's claim of retaliation is due to be granted.

## B. Harassment from a hostile work environment

The plaintiff alternatively alleges the existence of a sexually hostile work environment. To prove hostile work environment harassment under Title VII, a plaintiff must show that: (1) she is a member of a protected group; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on her sex; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatory abusive working environment; and (5) there is a basis for employer liability.  Johnson, 234 F.3d at 508; Mendoza, 195 F.3d at 1245; see also Baldwin v. Blue Cross/Blue Shield of Ala., 480 F.3d 1287, 1300 (11th Cir. 2007); Hulsey v. Pride Restaurants, LLC, 367 F.3d 1238, 1245 (11th Cir. 2004).  There is no question that a reasonable jury could conclude from the facts above that the plaintiff was a member of a protected group; that she was subjected to unwelcome harassment; and that the harassment was based on her sex.  DisposAll, however, asserts (1) that the harassment was not sufficiently severe or pervasive enough to alter the terms and conditions of employment and (2) that there is no basis for liability against DisposAll.

### 1. Whether the harassment was sufficiently severe or pervasive

To determine whether any alleged conduct is sufficiently severe or pervasive to alter an employee's terms or conditions of employment, courts assess (1) the frequency of the

discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance.  Mendoza, 195 F.3d at 1246. Analysis of these factors involves a subjective and objective component requiring this court to review "all the circumstances" to determine whether a hostile work environment exists.  Id.; see also Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).  In other words, "in order to be actionable... a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victims in fact did perceive to be so."  Faragher v. City of Boca Raton, 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).  The existence of sexual harassment must be determined in light of the record as a whole and "the totality of circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred." Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 69, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); see also Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).

There is certainly sufficient evidence, if believed by a jury, that the plaintiff subjectively perceived Mark's behavior while she was employed by DisposAll as harassing.  The plaintiff testified that Mark brushed up against her breasts, leaned all over her, and sometimes placed his arm on her breasts.  (Doc. 53-2, Smith Dep., pp. 18-20, 23-24, 35-38).  The plaintiff also testified that Mark "frequently" stated he could use her breasts as pillows and that her breasts were "huge" (Id., pp. 14, 21) and told her while she was bent over that he liked her "butt" and would look good behind it.  (Id., pp. 14, 16, 25).  She described an incident when Mark took a sausage

from a holiday gift basket and holding it against his groin area and stating he could be her sugar daddy (Id., p. 15) and also reported an instance when Mark called her at home asking her to come to his hotel room. (Id., pp. 15, 28-30).   Furthermore, the plaintiff attested that when Mark was filling out paperwork for a personal apartment, he asked the plaintiff "which [floor plan] you like, baby, because you need to be comfortable in here, too."  (Id., p. 30).  Lastly, the plaintiff testified that Mark told her that she would "fit in" with the waitresses at Hooters (Id., p. 14 & 22) and also asked her to help put his clothes on (Id., p. 17).  Although the plaintiff testified that she did not feel physically threatened by Mark (Id., p. 26), she later testified that she felt like Mark could physically threaten her or harm her because "I started to feel like he was kind of like a loose cannon..." (Id., p. 28).  The plaintiff also maintained that within a month after she started working there, she asked Mark to stop because "he's making me uncomfortable with his comments and gestures and things like that", that when Mark would make a comment about her "butt", she would say "that wasn't necessary and that is rude and out of order", that one time she "actually physically stood up and kind of yelled at him in reference to it."  (Id., p. 20, 25, 31).

As to the objective component, the court's review of all the circumstances, viewing all evidence in a light most favorable to the plaintiff and resolving all reasonable doubts about the facts in the plaintiff's favor, supports the existence of a genuine issue of material fact.  Mark's alleged conduct was not infrequent. Although the plaintiff could not testify as to the specific number of times these various incidents occurred, she did state that the number was "too many to count," that he would make comments "frequently", that he would brush up against her "repeatedly", and that sometimes the incidents would happen more than once in a day.  (Id., pp. 18, 21, 36-38).  Although the evidence submitted by DisposAll, if believed by the jury, could

result in a defense verdict as to this objective component, the plaintiff, on the other hand, has

submitted evidence that a reasonable jury could conclude that the environment created by Mark

was hostile or abusive.  See Johnson, 234 F.3d at 508-509(finding that 15 instances of

harassment over four months which included unwelcomed massages, sexual comments, a kiss,

and questions about plaintiff's sex life, were sufficiently severe and pervasive to constitute

sexual harassment).  In light of the foregoing, this court concludes that a reasonable jury could

find that Mark's alleged conduct is sufficiently severe or pervasive to alter the plaintiff's terms

or conditions of employment.

### 2. Whether there is a basis for employer liability

This court now turns to whether DisposAll may be liable for Mark's alleged harassment.

DisposAll first argues there is no basis for employer liability since the plaintiff "brought this

Title VII action against DisposAll-Florida (DisposAll, Inc.), a Florida corporation, and not her

actual employer, DisposAll-Mobile" and that the "undisputed evidence establishes that

DisposAll-Florida was not her employer." (Doc. 54, p. 7).  As part of her claim under Title VII,

the plaintiff is only able recover if she is able to prove an "employer" discriminated against her

on the basis of her sex.  A defendant's status as an employer is a substantive element of Title VII

as well as a question of jurisdiction.  As such, the Eleventh Circuit has dictated that this court

shall review a challenge to an employer's status under the summary judgment standard. See

Morrison v. Amway Corp., 323 F.3d 920, 926-929 (11th Cir. 2003); Garcia v. Copenhaver, Bell

& Assoc., 104 F.3d 1256, 1262-1264 (11th Cir. 1997).

DisposAll supported its argument with a declaration from Eugene Calabrese, who is

DisposAll's president, and with an Alabama Department of Industrial Relations New Hire

Report, which was filed with the State of Alabama, both of which state that the plaintiff's employer is Disposall Inc. of Mobile. (Doc. 53-1). The plaintiff, on the other hand, proffered several documents that she contends establish that she was employed by the defendant:(1) an employment agreement dated October 3, 2005, which provides that "[t]his Agreement confirmed my employment with DisposAll, Inc. and its affiliated Companies (together, the "Companies")... (Doc. 23-11, p. 1); (2) paperwork which indicates that all of the plaintiff's new hire forms were to be sent to "the Payroll Department in Alamonte Springs, Florida for processing." (Doc. 23-12); (3) three sworn statements taken by Greg Gerjel in Mobile, Alabama, where Mr. Gerjel identifies himself as general counsel for "DisposAll" or "the company" and that he was "proud of DisposAll because he gets to go to "all the different offices" of the "diverse company." (See Docs. 23-2, 23-3 & 23-4); (4) Mr. Gerjel's response on behalf of the respondent to the EEOC states that the plaintiff was hired as an office assistant "in DisposAll's Mobile, Alabama facility" and that Mark Calabrese who allegedly committed the harassment was "transferred" "out of State." (Doc. 23-5, pp. 2-3); and (5) several documents which the plaintiff signed before and after she was employed all provided that the employer was "DisposAll" and the bottom of the document entitled "Reference Request" also contains the name "DisposAll, Inc. on the bottom. (See Docs. 23-6 through 23-12). Viewing all evidence in a light most favorable to the plaintiff and resolving all reasonable doubts about the facts in the plaintiff's favor, this court finds that the defendant has failed to show that no genuine issue of material fact exists as to whether the defendant was the plaintiff's employer.

The defendant alternatively argues it is not liable for Mark's harassment of the plaintiff because it exercised reasonable care to prevent and correct promptly any sexually harassing

behavior and the plaintiff unreasonably failed to take advantage of any preventing or corrective opportunities provided by DisposAll.  (Doc. 54, p. 19).  DisposAll would be strictly liable to the plaintiff if (1) Mark was the plaintiff's supervisor; and (2) Mark took a tangible employment action against the plaintiff as a result of the sexual harassment.  Johnson, 234 F.3d at 509.  As a result, DisposAll would be able to avoid liability if it were to show that either (1) Mark was not the plaintiff's supervisor; or (2) Mark did not take a tangible employment action against the plaintiff.  Id. at 510.  There is no question that Mark was the plaintiff's supervisor, but the undisputed evidence is that Mark did not participate in plaintiff's termination and there is no evidence indicating that Mark took any other tangible employment action against the plaintiff.  As a result, the "two-part affirmative defense announced in Ellerth and Faragher applies."  Id.; see Faragher, 524 U.S. at 807, 118 S.Ct. 2275; Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 762-763, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

"Under this affirmative defense, [DisposAll] is not liable if it 'exercised reasonable care to prevent and correct promptly any sexually harassing behavior,' and [the plaintiff] 'unreasonably failed to take advantage of any preventive or corrective opportunities provided by [the defendant] or to avoid harm otherwise.'"  Johnson, 234 F.3d at 510(quoting Faragher, 524 U.S. at 807, 118 S.Ct. 2275).  With regards to the first element, DisposAll satisfied its obligation to exercise reasonable care to prevent unlawful harassment by implementing a comprehensive and widely distributed policy that prohibits all forms of unlawful harassment and that is "designed to encourage victims of harassment to come forward [without requiring] the victim to

complain first to the offending supervisor" and that this policy was distributed to the plaintiff.[4]

Madray v. Publix Supermarkets, Inc., 208 F.3d 1290, 1298 (11th Cir. 2000).  The rules and

regulations, which the plaintiff signed, includes a section on "Sexual Harassment" which

provides that if an employee is subject to harassment by another employee or supervisor, the

employee "should immediately report" the harassment to a "Supervisor or the General Manager"

and that the employee will not be "retaliated against for either filing a complaint or participating

in an investigation of harassment."  (Doc. 53-2, p. 52).  DisposAll's anti-harassment policy

provides alternative channels for making complaints other than the harassing supervisor which

satisfies this first element as a matter of law.

In regard to the second element, the court finds that the plaintiff unreasonably failed to

take advantage of any preventive or corrective opportunities provided by DisposAll.  "[W]hile

proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid

harm is not limited to showing an unreasonable failure to use any complaint procedure provided

by the employer, demonstration of such failure will normally suffice to satisfy the employer's

burden under the second element of the defense."  Faragher, 524 U.S. at 807-808, 118 S.Ct. at

2293.  It is undisputed that DisposAll's sexual harassment policy provided alternative channels

for making complaints other than through the harassing supervisor.  When asked why she did not

_____

[4] The plaintiff initialed a statement contained in the application that provided the she "acknowledge[d] and agree[d] that if at any time [she is] subjected to any type of discrimination or harassment, [she] will contact [her] supervisor or DisposAll's Executive Director to obtain assistance in the resolution of such matters" (Doc. 53-2, pp. 45-47) and signed a document providing that she read and understood all the rules and regulations contained in the rest of the document. (Id., p. 53).  Furthermore, the plaintiff admitted that at the time she was hired that she was aware that DisposAll maintained a policy prohibiting sexual harassment and unwanted touching and that she could make any complaints of sexual harassment to Eugene.  Id., p. 76, 177-178, 184).

use these alterative channels, the plaintiff explained that she "felt nothing would happen being that [the executive director] was [Mark's] brother" and that she did not contact the human resources department because the human resources department "was all his family..." (Id., p. 178 & 188).  As the Eleventh Circuit stated, "[w]e are mindful of the fact that severe harassment such as that which is alleged to have occurred here can be particularly traumatic" but such harassment "'cannot be [corrected] without the cooperation of the victims.'" Walton v. Johnson & Johnson Servs., Inc., 347 F.3d 1272, 1290 (11th Cir. 2003)(quoting Madray, 208 F.3d at 1302(alliteration in original)).  Therefore, "the victim of the alleged harassment has an obligation to use reasonable care to avoid harm where possible." Id.  Here, the plaintiff could have avoided most, if not all, of the actionable harassment by reporting Mark's behavior to Eugene Calabrese, Reese Stewart, or the human resources department in Florida.[5]  By failing to do so, the plaintiff did not give DisposAll an opportunity to address the situation and prevent further harm from occurring. Therefore, this court concludes that the plaintiff did not reasonably avail herself of the protections afforded by DisposAll's anti-harassment policies and that DisposAll is thus entitled to the Faragher defense as a matter of law.

## CONCLUSION

After due consideration of all matters presented and for the reasons set forth herein, it is **ORDERED** that DisposAll's motion for summary judgment (Doc. 53) as to the plaintiff's claims under federal law is **GRANTED**.  This court further declines to exercise supplemental jurisdiction over the plaintiff's claims under Alabama law claims, if, indeed those claims were

---

[5]The evidence demonstrates that once the matter was, in fact, brought to the attention of top management by the letter from plaintiff's attorney, the harassment immediately stopped.

alleged in the complaint or amended complaint[6], and thus those claims are **DISMISSED** with

prejudice.

      **DONE and ORDERED** this 30th  day of March, 2010.


                             /s/ Callie V. S. Granade
                             UNITED STATES DISTRICT JUDGE

---

[6] As defendant notes in its reply to defendant's response to the motion for summary judgement (Doc. 54 at p. 23)

> It is unclear from Smith's *Complaint* and *Amended Complaint* whether she seeks any relief under Alabama law. The only mention of any state law claims in Ms. Smith's *Complaint* and *Amended Complaint* is in the "Preliminary Statement," wherein Ms. Smith alleges she seeks relief for "assault and invasion of privacy as alleged herein" *Complaint* and *Amended Complaint*. The claims are not mentioned under a "Cause of Action," nor are they mentioned in her "Prayer for Relief." Moreover, nothing contained in the *Report of Parties' Planning Meeting* mentions that Smith is seeking relief for assault or invasion of privacy.